## STOCKARD S. S. CORP. v. JULES S. SOTTNEK CO., Inc.

### The CARIBSTAR.

### No. 17127.

United States District Court
E. D. New York.

May 9, 1951.

Burlingham, Veeder, Clark & Hupper, by Frederic Conger, New York City, for libelant.

Alexander & Ash, by Edward Ash, New York City, for respondent.

RAYFIEL, District Judge.

This action is brought by the libelant to recover for damages sustained by its vessel, the steamship Caribstar, on July 13, 1941.

On that day the vessel was lying portside to Pier 33, Brooklyn, New York, and was being loaded by the respondent, a stevedoring company. At about 7:00 p. m. the jumbo boom at the number 2 hatch was

rigged under the direction of the ship's first officer, a Mr. Buckley. This boom was on the foremast. A lighter lay alongside the starboard side of the vessel carrying two army tractors aboard, each weighing 14 tons, which were to be loaded to the deck at the number 2 hatch. The jumbo boom, as its name implies, is the heavy lift boom.

At about 10:30 on the night in question the first tractor was lifted by means of the jumbo boom and swung over to the port side of the Caribstar's deck at the number 2 hatch without incident. Thereafter and at about 10:40 p. m. the stevedores prepared the second tractor to be lifted by the jumbo boom. At first it was lifted a few inches and then about two or three feet when suddenly the foremast buckled and the tractor was lowered onto the deck of the lighter.

The libelant claims that the mast buckled due to the negligence of the stevedores in that, first, they failed to rig the preventers, which are additional supports for the mast and consist of two heavy wires about 1⅜ inches in diameter which run from the top of this steel mast to the deck, and, second, they permitted the tread of the tractor to be caught under the rail at the side of the lighter, thereby causing an unnecessary strain on the mast. The preventers are not used unless the jumbo boom is rigged, in which event they are fastened to the deck on each side of the ship.

I do not agree with the libelant's contentions. Referring to the rigging of the jumbo boom, libelant's witness, Velez, testified that it was the duty of the ship's officers to see that the ship's gear was working properly. Harper, the night mate, testified that the jumbo boom was rigged by the stevedores under the direction of Buckley, the chief mate. He testified as follows:—(see pages 10, 11 and 12 of his deposition)

"Q. Who prepared the heavy lift boom at No. 2 hatch? A. The stevedores.

"Q. Who told them how to do it? A. The chief mate and myself.

"Q. So that you and the chief mate supervised the work, while the stevedores did the actual handling, is that right?

"(Mr. Stuhr: I object to the form of the question) A. Correct.

"Q. Did you and the chief mate give any instructions to the stevedore as to how the heavy lift boom was to be fixed? A. The chief mate gave all the instructions, I assisted him, I did not give any instructions of any kind.

"Q. And when they were ready to lift with the heavy boom, had it been rigged as the chief mate had instructed the stevedores to do it? (Mr. Stuhr: If he knows) A. I can't recall that, I don't know.

"Q. Well, when it was rigged, before they started to lift the tractors, did it look to you as though the heavy lift boom had been properly rigged for the job? A. I left that to the chief mate.

"Q. But from your experience did it look to you as though the heavy lift boom had been properly rigged for the job?

"(Mr. Stuhr: I think that question should be rephrased, perhaps, as to whether he would have rigged it in the same way)

"Q. You can answer it. A. From my experience, the chief mate is a very well experienced man, he knew his job and he told me to leave the job and take care of something else, so I did not check on what he was doing because I considered him perfectly capable of taking care of it".

I find from that testimony that it was the chief mate's responsibility to see that the preventers were rigged when the jumbo boom was rigged. There is no testimony, as urged by the libelant, that they were not rigged because they would have interfered with the work in number 1 hatch. In fact there is no evidence that the number 1 hatch was being worked that night.

The cases cited by the libelant are not applicable to the case at bar. In all of those cases the charterer or stevedore rigged the equipment or chose to use equipment for a purpose for which it was not intended. In the instant case the jumbo boom was rigged under the supervision of the ship's chief mate and then used by the stevedores as a heavy lift—a purpose for which it was intended.

I likewise reject the libelant's contention that the stevedores were negligent

in that they permitted the tread of the tractor to be caught under the rail at the side of the lighter. The only testimony on that point was that of Velez, the master of the vessel, who was not on board at the time the accident happened, but who testified that after he came aboard the next morning he made an inspection and saw that the tread was jammed under the rail of the lighter.

Harper, the night mate, who was aboard when the accident occurred, did not testify to that effect. In fact, no mention was made of the jamming of the tractor tread. All of the respondent's witnesses denied categorically that the tractor jammed. All of the eye witnesses testified that the tractor was first lifted a few inches, then two or three feet and then the mast buckled so that it became necessary immediately to lower the tractor to the deck of the lighter.

Accordingly, I find in favor of the respondent dismissing the libel with costs.

Submit proposed findings of fact, conclusions of law and decree in conformity herewith.

### Findings of Fact

1. That at the times referred to, the libelant was a New York corporation and the owner of the above named vessel; the respondent was a New York corporation and was engaged in the stevedoring business and at the times hereinafter referred to was engaged in loading cargo aboard libelant's said vessel at Pier 33, Brooklyn, New York.

2. That on July 13, 1941, the jumbo boom of the said vessel had been rigged under the direction of the first officer of the said vessel which boom was at the ship's foremast; that at said time and place, two army tractors were laden aboard a lighter made fast on the starboard side of said vessel, each of said tractors weighing approximately 14 tons; the said tractors were to be lowered to the deck at #2 hatch.

3. That on the night of July 13, 1941, the respondent, through its employees, was in charge of the movement of the said tractors from the lighter to the deck of the said steamer; the first of the said tractors was properly laden aboard without incident or damage to the vessel, her tackle apparel,

the said tractor or the lighter; that when the said second tractor was being moved, it was first raised a few inches from the deck of the lighter and after everything appeared to be in order it was raised two or three feet above the deck of the lighter when suddenly the foremast on the said ship buckled and the said tractor was thereupon lowered back on to the lighter.

4. That neither of the tractors being moved from the lighter to the ship at any time caught under the rail or any other part of the lighter and that no act of the respondent, its servants, agents and employees caused or contributed to the buckling of the said mast and they properly performed their work in connection with the movement of the said tractor from the lighter to the said vessel.

### Conclusions of Law

1. Libelant has failed to sustain the burden of proof and has failed to establish that any fault or negligence on the part of the respondent in any way brought about or contributed to the buckling of the mast aboard the said vessel.

2. That the libel should be dismissed upon the merits and a final decree entered in favor of the respondent with costs in its favor to be taxed.